IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-00738-M

| | |
|---|---|
| **Damon Forney**,<br><br>Plaintiff,<br><br>v.<br><br>**Township of Cary, North Carolina**,[1]<br><br>Defendant. | **Order &<br>Memorandum & Recommendation** |

Defendant the Town of Cary asks the court to dismiss Plaintiff Damon Forney's complaint.[2] It argues that he did not properly serve the Town with the lawsuit and that his age and race discrimination claims are untimely. Forney disagrees, saying that service was proper and that equitable considerations preclude dismissing his complaint.

After reviewing the record and the parties' arguments, this opinion recommends dismissing Forney's complaint.[3] Forney did not file this action within 90 days of receipt of his right-to-sue letter from the EEOC, and he has not shown that it is appropriate to toll the filing deadline.

This opinion also sanctions Forney's attorney, Lucas Colantonio, for submitting a brief that contained fabricated legal authority for the second time. After his first transgression, the court warned him about the consequences of engaging in similar conduct in the future. Since Colantonio did not heed that warning, the court will exercise its inherent authority to require him to pay the

[1] While Forney stylizes the Defendant's name this way, this is a misnomer. The proper name for Cary, North Carolina is "the Town of Cary." *See, e.g.*, 2005 N.C. Sess. Laws 2005-117. This opinion uses the latter name to refer to the Defendant.
[2] The court has subject-matter jurisdiction to hear this matter under 28 U.S.C. § 1331 because this matter arises under the Constitution, laws, or treaties of the United States. Forney brings his claims under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq., and the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq.
[3] The presiding district judge has referred this matter for entry of a recommendation on its resolution. 28 U.S.C. § 636(b)(1)(B).

fees the Town of Cary incurred in responding to his brief and refer this matter to the North Carolina State Bar.

## I. Background

### A. The Underlying Facts

In 2012, Damon Forney began working for Cary at the Western Wake Regional Water Reclamation Facility. Compl. ¶ 11, D.E. 1. In early 2021, Forney's assistant retired, and the position remained unfilled for more than a year. *Id.* ¶¶ 12–13. Forney was told that no one would be hired to fill that position. *Id.* ¶ 15. Forney contends that he was not given personnel or resources with which to successfully conduct his work while Cary properly staffed similar facilities. *Id.* ¶¶ 25–26. Forney attributes this disparity to racial discrimination. *Id.* ¶ 26.

Further, in February 2022, Forney informed a subordinate, David Parker, that Parker would not be promoted. *Id.* ¶ 17. According to Forney, Parker then lodged false complaints against him. *Id.* ¶ 18. Cary's human resources department allegedly investigated the allegations without informing Forney. *Id.* ¶ 19. The matter resolved when Parker was relocated to another facility. *Id.* ¶ 21. Forney says that Parker was relocated instead of punished because Parker is white and Forney is black. *Id.* ¶ 22.

Forney further contends that there had been "a campaign" to force his retirement because of his age. *Id.* ¶ 28. Forney alleges that he has not received accurate performance reviews because the evaluation is based on the subjective perception of the evaluator. *Id.* ¶ 30. This culminated in 2024 when Forney was called into a meeting and confronted with allegations of poor performance. *Id.* ¶¶ 31–32. The Cary employees who made these allegations did not substantiate their claims or

give Forney a chance to rebut them. *Id.* ¶¶ 33–35. Forney also complains about disparate pay despite identical performance evaluations. *Id.* ¶ 23.

Around the same time, Forney told his evaluator that he wished to work for two or three more years but the evaluator told Forney he was "old school" and should "go out on top" and threatened him with adverse actions such as reassignment and increased supervision. *Id.* ¶¶ 38–40. These threats, combined with other alleged discrimination, caused Forney to retire. *Id.* ¶ 43.

Forney filed a Charge of Discrimination with the EEOC in May 2024. D.E. 9–2 at 2. In that document, Forney alleged that the Town discriminated against him based on his age and retaliated against him. *Id.* The EEOC sent Forney a Notice of Right to Sue Letter declining to proceed further with its investigation on March 21, 2025. D.E. 9–1 at 2.

### B. Forney's First Suit Against Cary

In June 2025, Forney sued Cary for discriminating against him based on his race and age. Compl., *Forney* v. *Twp. of Cary,* No. 5:25-CV-00319, (E.D.N.C. filed June 12, 2025) ("*Forney I*"), D.E. 1. The Town responded by asking the court to dismiss his complaint because Forney had not completed service within 90 days of the complaint's filing. Mot. to Dismiss, *Forney* v. *Twp. of Cary,* No. 5:25-CV-00319, (E.D.N.C. filed Sept. 10, 2025), D.E. 7.

In his response, Forney asserted that service had been completed because he sent the summons and the complaint to the Cary Town Hall. Resp. in Opp'n at 2, *Forney* v. *Twp. of Cary,* No. 5:25-CV-00319 (E.D.N.C. filed Sept. 12, 2025), D.E. 10. To bolster this argument, he cited a case from the North Carolina Court of Appeals captioned *In re S.L.L.*, which he claimed could be found at 177 N.C. App. 430, 432, 628 S.E.2d 618 (2006). *Id.* at 3. According to Forney, that case stood for the proposition that "North Carolina courts have held that service directed to the

municipality at its proper official address constitutes valid service even if the summons does not list the individual's personal name, so long as it is received by the proper office." *Id.* at 3.

In its reply, the Town pointed out several problems with Forney's response. To begin with, *In re S.L.L.* did not appear at the citation Forney provided. Reply at 4, *Forney* v. *Twp. of Cary,* No. 5:25-CV-00319 (E.D.N.C. filed Sept. 17, 2025), D.E. 11. Instead, *In re S.L.L.* could be found at 167 N.C. App. 362, 605 S.E.2d 498 (2004). *Id.* at 4 n.1. And neither *In re S.L.L.* nor the cases that appear at the citations Forney included dealt with service of process. *Id.*

In its opinion granting the Town's motion, the court noted these problems. Given the lack of actual authority to support his argument, the court rejected it and "warn[ed] plaintiff's counsel about citing non-existent cases." Order at 4, *Forney* v. *Twp. of Cary,* No. 5:25-CV-00319 (E.D.N.C. filed Oct. 8, 2025), D.E. 12. It went on to explain that "[t]here should not be a next time. If there is, the court will impose monetary and other sanctions." *Id.* at 4 n.3.

The court also took issue with Forney's reliance on *Armco, Inc.* v. *Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984). Forney cited this case for the proposition that "courts in this circuit have consistently held that technical objections are disfavored where service is reasonably calculated to give notice and does so in fact." Resp. in Opp'n at 3, *Forney* v. *Twp. of Cary,* No. 5:25-CV-00319 (E.D.N.C. filed Sept. 12, 2025). But the court noted that Colantonio "conveniently quotes only the first half of the paragraph." Order at 3, *Forney* v. *Twp. of Cary,* No. 5:25-CV-00319 (E.D.N.C. filed Oct. 8, 2025). The case, when fully quoted, states that "[w]hen there is actual notice, every technical violation of the rule or failure of strict compliance may not invalidate the service of process. But the rules are there to be followed,

and plain requirements for the means of effecting service of process may not be ignored." *Id.* at 4 (quoting *Armco*, 733 F.2d at 1089).

The court then dismissed Forney's case without prejudice on October 8, 2025.

### C. Forney's Second Case Against Cary

Just over a month later, on November 17, 2025, Forney filed this action. Compl., D.E. 1. The Town moved to dismiss the complaint on February 16, 2026. D.E. 8. According to the court's Local Civil Rules, Forney's response was due on March 9, 2026. Local Civil Rule 7.1(f)(1) (noting that responses to such motions must be filed within 21 days of service).

But the response deadline came and went without anything being filed. Instead, it was not until April 7, 2026, nearly a month after the response deadline, that Forney responded. Resp. in Opp'n, D.E. 14.

The response's tardiness was not its most glaring error. In arguing that he properly served Cary, Forney again relied on *In re S.L.L.*, and included the same erroneous citations. *Id.* at 3. He also included the incomplete discussion of the Fourth Circuit's *Armco* decision that was included in the *Forney I* response. *Id.* The court ordered Colantonio to appear and show cause why sanctions should not be imposed for including fabricated authority and misstatement about *Armco*. D.E. 15.

At the hearing, Colantonio exhibited worrying behaviors. Colantonio first said that his errors were because of his wife's recent pregnancy complications. Apr. 16, 2026 Hr'g Tr. at 4:19–24, D.E. 18. When the court pointed out that Colantonio's failings predated his wife's pregnancy, Colantonio's responses became difficult to follow.[4] He first stated that *In re S.L.L.* was a mistaken

[4] The court notes that similar allegations of erroneous citations were leveled against Colantonio in *Mangum* v. *Penney*

citation and instead it was meant to be *Hoyle* v. *United Auto Workers Local Union 5285*, 444 F. Supp. 2d 467 (W.D.N.C. 2006). *Id.* at 5:6–6:6. But when the court asked him to point out how that case supports his brief's proposition, Colantonio said he had only brought the first page of the case to court. *Id.* at 22:11–23:9.

The court then provided Colantonio with the entire case. *Id.* at 24:22–24. Colantonio pointed to a portion of the case that cited *Capstar Corp.* v. *Pristine Indus., Inc.*, 768 F. Supp. 518, 521 (W.D.N.C. 1991), and said that *Capstar* supported his position. *Id.* at 25:1–9. When the court noted that *Capstar* did not do so, Colantonio said that he was not relying on *Capstar* but *Hoyle*. *Id.* at 26:10–28:20.

Colantonio provided other curious explanations. He alternatively did not know how *In re S.L.L.* ended up in his draft response, but also said his staff placed it there. *Id.* at 18:14–19:25. But Colantonio was sure that he intended to replace *In re S.L.L.* with *Hoyle*. *Id.* at 19:13–14.

When asked how such an error could happen after a warning about the same conduct mere months earlier, Colantonio's explanations were again contradictory. Colantonio alternatively said that he did not read the order, that he skimmed it, and that he read it with his client. *Id.* at 10:17–23, 17:13–21. The court remains unsure what Colantonio alleges he did to review the *Forney I* order.

Colantonio also explained his late filing by saying that he had obtained opposing counsel's consent. *Id.* at 30:10–23. He offered to provide an email showing the same. *Id.* And this was confirmed by opposing counsel who was present at the hearing. *Id.* at 32:9–14. But Colantonio

---

*OpCo, LLC*, 5:24-CV-289-BO (E.D.N.C. filed June 12, 2025). And Colantonio failed to abide by the court's order to submit a status report in *Mangum* v. *Ross Dress for Less*, No. 5:24-CV-00592-D (E.D.N.C. filed Oct. 17, 2024).

never moved for an extension and could not explain why he did not do so in accordance with Local Rule 6.1.

The court concluded by expressing its concern and encouraging Colantonio to take advantage of any support resources available to him through the North Carolina Bar. *Id.* at 35:4–23. It also noted that this order would follow. *Id.* at 35:2–3.

## II. Discussion

The district court should dismiss Forney's complaint because it is barred by the 90-day statute of limitations for federal employment discrimination actions. Forney did not file this action within the limitations period, and he has not shown that the court should toll or otherwise ignore that shortcoming. After addressing the substance of the Town's motion, this opinion will also address the inclusion of fabricated legal authority in Forney's response.

### A. Motion to Dismiss

Cary argues that Forney's complaint should be dismissed because it fails to state a claim upon which relief may be granted.[5] The Supreme Court has explained that to withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). The Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to

[5] The Town also argues that this action should be dismissed because Forney failed to properly serve it with the summons and complaint. Given that a court can allow a party to remedy a failure to properly serve a defendant, *Scott* v. *Md. State Dep't of Lab.*, 673 F. App'x 299, 304 (4th Cir. 2016), but cannot remedy a failure to timely file an action, this opinion will opt to address the Town's dispositive substantive argument instead of the procedural one.

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Thus, while a court must accept all the factual allegations in a complaint as true, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

After *Iqbal*, a court considering a motion under Rule 12(b)(6) must subject a complaint to a two-part test. First, the court must identify the allegations in the complaint that are not entitled to the assumption of truth because they are conclusory or mere formulaic recitations of the elements of a claim. *Id.* at 679. Then, taking the remaining factual allegations as true, the court must determine whether the complaint's allegations "plausibly give rise to an entitlement to relief." *Id.* (quotation modified). If, after conducting this two-part analysis, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (quotation modified). If the complaint fails to show that the plaintiff is entitled to relief, the court must dismiss the deficient claims. *Id*.

Cary argues that the court should dismiss Forney's claims because they are barred by the statute of limitations. Generally, employment discrimination lawsuits must be filed within 90 days of the plaintiff's receipt of a right-to-sue letter from the EEOC, and the Town claims Forney failed to meet that deadline.[6] Forney argues that this action is timely because *Forney I* tolled the limitations period. But Forney has not established that he is entitled to the benefit of equitable tolling, and, even if he was, he still did not file this lawsuit before the 90-day period expired. So

[6] When analyzing a motion to dismiss, the "court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co.* v. *Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) (citing *Sec'y of State for Defence* v. *Trimble Navigation Ltd*., 484 F.3d 700, 705 (4th Cir. 2007)). But the "court may also consider a document submitted by a moving party if it is 'integral to the complaint and there is no dispute about the document's authenticity.'" *Derose for Est. of Derose* v. *DoorDash, Inc.*, 675 F. Supp. 3d 591, 599 (E.D.N.C. 2023) (quoting *Goines* v. *Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)).

the district court should grant the Town's motion on this point and dismiss Forney's claims.

Both Title VII and the ADEA require a plaintiff to file his complaint within 90 days of receiving a right-to-sue letter from the EEOC. 42 U.S.C. § 2000e-5(f)(1); 29 U.S.C. § 626(e). The EEOC issued Forney's right to sue letter on March 21, 2025, thus the limitations period for filing suit expired on June 23, 2025.[7] Since Forney did not file this action until November 17, 2025, it is barred by the statute of limitations.

Forney raises several arguments in an attempt to avoid this conclusion. But none of those arguments are persuasive.

First, he argues that the filing of *Forney I*, which occurred before the limitations period expired, tolled the 90-day limitations period since the court dismissed that action without prejudice. According to Forney, he could refile his complaint "within one year from the date of dismissal, even if the statute of limitations expired." Resp. in Opp'n at 5. He cites no authority for this proposition.

And that is likely because there is none. Federal courts have rejected that contention in favor of a "general rule that a Title VII complaint that has been filed but then dismissed without prejudice does not toll the 90–day limitations period." *Angles* v. *Dollar Tree Stores, Inc.*, 494 F. App'x 326, 329 (4th Cir. 2012). *Accord Quinn* v. *Copart of Conn., Inc.*, 791 F. App'x 393, 395 (4th Cir. 2019); *Mann* v. *Standard Motor Prods., Inc.*, 532 F. App'x 417, 418 (4th Cir. 2013); *O'Donnell* v. *Vencor Inc.*, 466 F.3d 1104, 1111 (9th Cir. 2006); *Chico–Velez* v. *Roche Prods., Inc.*, 139 F.3d 56, 59 (1st Cir. 1998); *Simons* v. *Sw. Petro–Chem, Inc.*, 28 F.3d 1029, 1030–31

[7] The record does not reflect when Forney received the right-to-sue letter. In that case, the court presumes that the plaintiff received the letter three days after its mailing. *Scoggins* v. *Hillcrest Foods, Inc.*, 339 F. Supp. 2d 702, 704-05 (M.D.N.C. 2004). As a result, Forney's 90-day period began to run on March 24, 2025.

(10th Cir. 1994); *Minnette* v. *Time Warner*, 997 F.2d 1023, 1027 (2d Cir. 1993); *Berry* v. *CIGNA/RSI-CIGNA*, 975 F.2d 1188, 1191 (5th Cir. 1992). So the timely filing and subsequent dismissal of *Forney I* did not toll the limitations period.

But even if *Forney I* tolled the statute of limitations, this action would still be untimely. By the time Forney filed his first lawsuit, 80 days had passed since the EEOC issued Forney's right-to-sue letter. The court dismissed *Forney I* on October 8, 2025, Judgment, *Forney* v. *Twp. of Cary*, 5:25-CV-00319 (Oct. 8, 2025), D.E. 13, meaning that a tolled limitations period would have expired on Monday, October 20, 2025, weeks before Forney filed this action.

Forney also makes a passing mention of the doctrine of equitable tolling. Resp. in Opp'n at 4. Courts can equitably toll a limitations period and find an otherwise untimely complaint to be timely under two circumstances. The first circumstance arises when a defendant's wrongful conduct prevented a plaintiff from asserting his claims. *Harris* v. *Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). And the second circumstance occurs when "extraordinary circumstances beyond the plaintiffs' control made it impossible to file the claims on time." *Id.*

Neither circumstance is present here. Forney does not point to any wrongdoing on Cary's part which prevented him from timely filing his claim. And he has not identified any extraordinary circumstances beyond his control that prevented him from doing so. The fact that his first action was dismissed does not qualify as an extraordinary circumstance that justifies tolling the limitations period. *Ross* v. *Erie Ins. Exch*, No. RDB-24–2414, 2026 WL 1674812, at *6 (D. Md. June 10, 2026) ("Courts have repeatedly rejected the assertion that, absent additional extraordinary circumstances, dismissal of an original complaint alone justifies equitable tolling in discrimination cases.").

Thus Forney's action is barred by the statute of limitations and should be dismissed.

### B. Sanction for Including Fabricated Authority

Article III of the Constitution vests federal courts with the "judicial Power of the United States[.]" U.S. Const. Art. III § 1. That power includes the inherent authority to sanction someone who "deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process[.]" *United States* v. *Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993). While the Fourth Circuit has not established the evidentiary standard that must be met for a court to impose sanctions, district courts within the circuit regularly apply a clear and convincing evidence standard. See *Six v. Generations Federal Credit Union*, 891 F.3d 508, 520 n.9 (4th Cir. 2018); *Yoder* v. *Conaway Racing & Trucking, LLC*, No. LKG-23–1365, 2026 WL 524140, at *8 (D. Md. Feb. 25, 2026). That standard is met when a court has "a firm belief or conviction, without hesitancy, as to the truth of the allegations sought to be established[.]" *Jimenez* v. *DaimlerChrysler Corp.*, 269 F.3d 439, 450 (4th Cir. 2001).

The record provides clear and convincing evidence that Colantonio engaged in conduct that justifies imposing sanctions under the court's inherent authority. First, Colantonio provided erroneous case citations repeatedly even after being warned. Colantonio has admitted that the citation was erroneous. Hr'g Tr. at 4:24–5:13. And after engaging in the same conduct in *Forney I*, a United States District Judge warned Colantonio that similar conduct would not be tolerated and would result in "monetary and other sanctions." Order at 4 n.3, *Forney I*. Given that warning, Colantonio's "apparent, continuing lack of respect for the Court . . . is precisely the situation in which the Court's inherent power to sanction" is appropriate. *Pearson* v. *Prichard's Excavating & Mobile Home Trans.*, No. 3:13–CV-19629, 2014 WL 534221, at *2 (S.D.W. Va. Feb. 10, 2014).

Thus the record establishes by clear and convincing evidence that Colantonio knowingly submitted a pleading containing fabricated authority and citations on multiple occasions and even after being warned. This conduct constitutes an abuse of the judicial process that is utterly inconsistent with the orderly administration of justice and undermines the integrity of the judicial process. Colantonio's repeated conduct also establishes that he acted in bad faith when he submitted his response. Thus the court may sanction Colantonio under its inherent authority.

When exercising its inherent authority to sanction, a court must do so "with restraint and discretion." *Roadway Exp., Inc.* v. *Piper*, 447 U.S. 752, 764 (1980). And any sanction imposed should be designed to "remedy the harm caused by a party's abuse of the judicial process." *Beach Mart, Inc.* v. *L & L Wings, Inc.*, 302 F.R.D. 396, 406 (E.D.N.C. 2014) (citing *Chambers* v. *NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)). In fashioning a sanction, a court should not only consider what harms have been suffered but must also keep an eye towards deterring future abuses. *Franklin Livestock, Inc.* v. *Boehringer Ingelheim Vetmedica, Inc.*, 251 F. Supp. 3d 962, 970 (E.D.N.C. 2017) (collecting cases).

The record in this case shows that a significant sanction is warranted. The submission of fabricated authority imposes substantial costs on the opposing party, the court, and the judicial process. "Every paper filed with the Clerk of this Court, no matter how repetitious or frivolous, requires some portion of the institution's limited resources." *In re McDonald*, 489 U.S. 180, 184 (1989). When confronted with erroneous citations, the court must review the filing, determine the correct course of action, and then take steps to redress counsel's misconduct. *United States* v. *Farris*, 171 F.4th 920, 923 (6th Cir. 2026). This work consumes time and resources, which should be allocated to serving "the interests of justice," not dealing with fabricated legal authority. *In re*

*McDonald*, 489 U.S. at 184. Fabricated authority imposes similar costs on an opposing party who must identify and address it.

Further, Colantonio is a repeat offender. He received leniency in *Forney I* and nevertheless engaged in exactly the same conduct in this case. This pattern of inexcusable conduct makes Colantonio's misconduct more egregious.

Finally, Colantonio's lack of diligence in addressing this situation shows his cavalier attitude to the court's admonitions. Though warned by the court against misuse of citations, Colantonio admits that he did not investigate the source of the erroneous citations in *Forney I*. Hr'g Tr. at 10:6–10. And he admitted that he "did not fully review" the *Forney I* order. *Id.* at 17:5–8. These actions demonstrates a serious disregard for the court's warning and authority.

For these reasons a significant sanction is needed to vindicate the court's authority. *Young* v. *U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 796 (1987). The sanction must be calculated to prevent Colantonio from continuing his abusive practices before this court. And the sanction must act as a general deterrent to others who may be tempted to act in a similar way. *L & L Wings, Inc.*, 302 F.R.D. at 415–16 (E.D.N.C. 2014).

After considering Colantonio's conduct and the need to deter similar conduct from him and other litigants, the court orders that he pay the attorney's fees incurred by the Town of Cary as a result of his brief. These fees include, but are not limited to, drafting its reply brief and attending the show cause hearing. The Town must submit a brief and supporting documentation regarding these fees within 10 days from the entry of this order. Colantonio may file a response no later than 10 days after the Town files its brief.

Further, the Clerk of Court is directed to send a copy of this order and a transcript of the April 16, 2026 hearing (D.E. 18) to the North Carolina State Bar for whatever action it deems appropriate, including consideration of whether disciplinary or disability-related measures are warranted.

## III. Conclusion

Forney's claims are barred by the statute of limitations because he did not file this action within 90 days from receipt of his right-to-sue letter. So the District Court should grant Cary's motion to dismiss. D.E. 8.

And, as set out above, the court sanctions Lucas Colantonio under its inherent authority for including fabricated authority in a brief filed with the court. The Town, Colantonio, and the Clerk must proceed as outlined above.

The Clerk of Court must serve a copy of this Memorandum and Recommendation ("M&R") on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make their own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: August 3, 2026

Robert T. Numbers, II
United States Magistrate Judge